IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAMES DOUGLAS ELLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:04CV00453 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

BEATY, District Judge.

This matter comes before this Court pursuant to Plaintiff James Douglas Ellis' ("Ellis" or "Plaintiff") Motion for Summary Judgment [Document #9] and Defendant United States of America's ("Defendant" or the "Government") Cross Motion for Summary Judgment [Document #12]. Plaintiff filed suit in this case to quiet title, pursuant to the Quiet Title Act, 28 U.S.C. § 2409a, to a piece of real property that had been sold at public auction. Plaintiff seeks to quiet title because Plaintiff argues that the Government, formerly a junior lien holder, exercised its power of redemption under 26 U.S.C. § 7425(d) in an untimely fashion.

I.      FACTUAL HISTORY

Plaintiff and Defendant agree that there are no genuine issues of material fact. The real property at issue (the "Property") is located in Chatham County, North Carolina. It is more particularly described as:

> BEING all of Parcel "A" containing .701 acres, more or less as described on a Plat dated February 12, 1990 entitled "Topo Survey for Jessie Bradley," prepared by James D. Hunter, RLS and recorded in Plat Slide 90-54, Chatham County Registry to which Plat reference is hereby made for greater certainty of description.

(Complaint, ¶ 4.)  On December 3, 2003, the Property was sold at a nonjudicial public sale pursuant to a Deed of Trust dated January 23, 1998 as recorded in Book 741, Page 520 in the Office of Register of Deeds for Chatham County.

On December 12, 2003, Plaintiff tendered an upset bid in the amount of $39,900 pursuant to N.C. Gen. Stat. § 45-21.27.  No further upset bids were tendered for the Property, and the Substitute Trustee conveyed the Property to Ellis by deed dated January 12, 2004.

On April 19, 2004, the Government tendered to Plaintiff a check in the amount of $40,717.19.  The Government filed a Certificate of Redemption with the Register of Deeds on or about this date, which recited the date of sale as December 12, 2003.  After Plaintiff filed the Complaint in this action, the Government filed a Corrected Certificate of Redemption on June 16, 2004, which stated that the date of sale was December 22, 2003.

Based upon these facts, the parties agree that the sole issue before this Court is determining the "date of the sale" under North Carolina law.  If December 3, 2003, the day of the public auction, was the "date of sale", then the Government redeemed the Property 138 days later.  If December 12, 2003, the date of Ellis' upset bid, was the "date of sale", then the Government redeemed the Property 129 days later.  If December 22, 2003, the date Ellis' bid became final, was the "date of sale", then the Government redeemed the Property 119 days later.  Under the applicable law, the Government must redeem the Property within 120 days or lose its lien as a matter of law.

II.    LEGAL ANALYSIS

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is considered "material" if it "might affect the outcome of the suit under the governing law . . . ."

2

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In this case, both Plaintiff and Defendant have asserted motions for summary judgment and agree that there are no factual disputes, just a question of law.

Under 26 U.S.C. § 7425(d), the Government may redeem property for which it held a junior lien after a sale of such property to satisfy a senior lien. The section provides in relevant part: "In the case of a sale of real property to which subsection (b) applies to satisfy a lien prior to that of the United States, the Secretary may redeem such property within the period of 120 days from the date of such sale or the period allowable for redemption under local law, whichever is longer." 26 U.S.C. § 7425(d)(1). To redeem, the Government must tender to the buyer a payment in the amount specified by the statute. Southwest Prods. Co. v. United States, 882 F.2d 113, 118-19 (4th Cir. 1989).

"Redemption" is the "right of a debtor, and sometimes of a debtor's other creditors, to repurchase from a buyer at a forced sale property of the debtor that was seized and sold in satisfaction of a judgment or other claim against the debtor, which right usually is limited to forced sales of real property." Black's Law Dictionary 1278 (6th ed. 1990). While redemption prior to foreclosure is a matter of common law, redemption after foreclosure is a matter of statute. See Parker v. Dacres, 130 U.S. 43, 47-48, 9 S. Ct. 433, 434 (1889). North Carolina has no redemption statute, in the sense that a debtor or junior lien holder has no special right to repurchase property from a buyer after the completion of a foreclosure sale. N.C. Gen. Stat. §§ 45-21.1 - 45.21.33.[1]

---

[1]However, under North Carolina law, a debtor, or a third party, may terminate a trustee's power of sale if, prior to the time fixed for the sale, or prior to the expiration of the time for submitting an upset bid after a sale has been held, a payment is made to cover the obligation secured by the mortgage plus the expenses incurred with respect to the sale or proposed sale. See N.C. Gen. Stat. § 45-21.20; Davis v. Union Cent. Life Ins. Co., 150 S.E. 120, 197 N.C. 617 (1929)(allowing

3

Instead, the key feature of North Carolina law dealing with power of sale foreclosures is that within

10 days of a public auction, any person may submit an upset bid to purchase the property. N.C.

Gen. Stat. § 45-21.27. Similarly, if an upset bid is made after a foreclosure sale, another 10-day

period must pass without a subsequent upset bid in order for the foreclosure sale to become

complete. See In re Newcomb, 112 N.C. App. 67, 71, 434 S.E.2d 648, 650 (1993). This upset bid

period allows junior lien holders to protect their interests by: (1) paying off the more senior

obligation prior to foreclosure; (2) bidding on the property at the foreclosure sale for the prior lien,

or ensuring that the sale brings in enough money to protect their interests after the discharge of the

more senior lien; or (3) entering an upset bid within ten days after the foreclosure sale. See Allied

Mortg. & Development Co. v. Pitts, 272 N.C. 196, 200, 158 S.E.2d 53, 57 (1967).

Because North Carolina has no period of redemption for junior lien holders, the

Government must rely on the language in 26 U.S.C. § 7425(d)(1) which states that the Secretary

"may redeem such property within the period of 120 days from the date of such sale" and not the

language referring to redemption under state law. To determine this "date of sale", a Treasury

Regulation, 26 C.F.R. § 301.7425-2(b), is instructive as it provides rules for determining the "date

of sale":

> In the case of a nonjudicial sale subject to the provisions of section
> 7425(b), in order to compute any period of time determined with
> reference to the date of sale, the date of sale shall be determined in
> accordance with the following rules:
>
> (1) In the case of divestment of junior liens on property resulting

---

third party to purchase note after sale but before 10-day upset bid period had run, and thereafter
enforce the security). When a trustee's power of sale is terminated prior to the expiration of the
time to submit an upset bid, North Carolina courts deem the foreclosure sale itself to have been
incomplete. In re Newcomb, 112 N.C. App. 67, 71, 434 S.E.2d 648, 650 (1993).

4

directly from a public sale, the date of sale is deemed to be the date
the public sale is held, regardless of the date under local law on which
junior liens on the property are divested or the title to the property
is transferred . . .

26 C.F.R. § 301.7425-2(b).

Under North Carolina law, "[T]he foreclosure of a senior mortgage will cut off junior liens

or encumbrances." Merchants Bank & Trust Co. v. Watson, 187 N.C. 107, 112, 121 S.E. 181, 183

(1924)(citation omitted). It is unclear to this Court under North Carolina law exactly when those

junior liens are cut off: either the date of the public auction or on the date the foreclosure becomes

complete. However, it is unnecessary to resolve this question. Under the plain language of 26

C.F.R. § 301.7425-2(b), the "date of sale" is the date the public auction is held, whether or not the

junior liens are divested as of the date of the public auction or at some later point when the sale

becomes complete at the end of the upset bid period. Because the junior liens divest directly as a

result of the public sale, the plain language of the Regulation is clear that the date of sale must be

the date the public auction is held, or in this case, on December 3, 2003.[2]

While this regulation appears to be clear as to how this Court should determine the date of

sale, Defendant argues that, in fact, this regulation must be read in conjunction with another treasury

regulation that requires the United States to pay the actual amount paid by the purchaser, plus

interest and some expenses. 26 C.F.R. § 301.7425-4(b). As such, Defendant argues that the "date

of sale" cannot occur unless and until both junior liens are divested *and* the purchaser and purchase

price are established. For this argument, Defendant mistakenly relies upon Southwest Products Co.

---

[2]The examples in 26 C.F.R. § 301.7425-2(c) also support this result. In example 1, in a state
where a public auction is held, but a sheriff must issue the purchaser the deed to the real property,
the date of sale is the date of the public auction, despite the fact that junior liens are "legally divested
on a later date when the sheriff issues the deed." 26 C.F.R. § 301.7425-2(c).

5

v. United States, 882 F.2d 113, 117 (4th Cir. 1989).

In Southwest Products, the Fourth Circuit, applying Virginia real property law, considered whether the Government had properly redeemed a property when it attempted to tender a check to the plaintiff prior to the expiration of the 120-day time limitation. Id. Southwest Products had been the highest bidder at a foreclosure sale, but was allowed to forego immediate payment of the purchase price because of financial difficulties. Id. at 115. Upon learning that the Government was interested in redemption, Southwest Products allegedly overstated its expenses so as to inflate the price the Government would have to pay to redeem. Id. Southwest Products then allegedly sent a letter to the trustee stating that it was withdrawing its bid due to financial difficulties and stating that the trustee should hold another foreclosure sale. Id. Neither Southwest Products nor the trustee notified the Government of Southwest Product's intention to withdraw its bid. Id. Subsequently, and still within the 120-day period, the Government tendered to Southwest Products a redemption check. Id. Southwest Products refused to accept the check because it claimed that it had withdrawn its bid and so it was not the owner of the property. Id. at 116.

The Fourth Circuit found that the Government's right of redemption was "not triggered by the transfer of the property's title," but instead was triggered by "the occurrence of the 'sale' at the public auction." Id. at 117. While the court further stated that "it is axiomatic that the right [to redeem] cannot be exercised against a party that does not have an interest in the subject property," the court found that Southwest Products possessed an equitable interest to which the Government could succeed upon redemption. Id. Additionally, the Fourth Circuit focused upon a policy argument in that if it had agreed with Southwest Products, the court would then be "allowing foreclosing lienholders to thwart the clear legislative intent" of Congress, in that "[a]llowing bid

6

withdrawal followed by renewed bidding at a second sale would encourage foreclosing lienors, in states permitting deficiency judgments, to bid low initially in hopes of obtaining deficiency judgments and reselling at the higher market value, but to withdraw the low bid if the IRS seeks redemption, bidding higher at the second sale to thwart any redemption efforts." Id. at 118. This would have the effect of discouraging foreclosing lienholders to bid a fair price on the foreclosure property. Id.

While it is true in the instant case that Plaintiff must have an interest in the Property for the Government to redeem that interest, the Court finds that it is unnecessary to read the regulations together so as to require that the Government's 120-day period to redeem can only begin after Plaintiff's bid becomes final.[3] By the time the Government decided to redeem, Plaintiff had acquired full legal rights to the Property to which the Government could succeed upon redemption. See Southwest Products, 882 F.2d at 117. Well prior to the end of the 120-day period after the public auction, the Government knew who to pay and how much was required to redeem the Property.[4] However, in this case, it did not do so within the 120-day period.

Finally, unlike Southwest Products, there is no claim in this case that Plaintiff in any way

---

[3]While Plaintiff did not acquire full legal rights to the Property during the time period between making the upset bid and it becoming final, Plaintiff did acquire "entirely voidable rights," or put another way, became a "preferred proposer until confirmation". See Beneficial Mortg. Co. of N.C., Inc. v. Barrington & Jones Law Firm, P.A., 164 N.C. App. 41, 46, 595 S.E.2d 705, 709 (2004); Davis v. Union Cent. Life Ins. Co., 197 N.C. 617, 617, 150 S.E. 120, 122 (1929)(citation omitted). However, since this Court does not find that the "date of sale" was the date Plaintiff submitted a bid on the Property, the existence of Plaintiff's rights or the lack thereof during the time period between his bid and that bid becoming final does not change the Court's analysis concerning 26 C.F.R. § 301.7425-2(b).

[4]The Court notes that had successive upset bid periods ensued, potentially extending the time after the public auction beyond the 120-day period, the Government would not have been precluded from making its own upset bid in an amount large enough to protect its interest in the Property.

7

acted with "unclean hands" in making an upset bid. In fact, the only potential conflict of positions is made against the Government, which initially stated in its Certificate of Redemption that the "date of sale" was December 12, 2003, but after this litigation was instituted, filed an amended Certificate of Redemption to state that the "date of sale" was December 22, 2003, so as to make its efforts to redeem on April 19, 2004 timely. Nevertheless, because of the foregoing conclusions of law, this Court sees no reason to disagree with Southwest Products because that case finds that the "date of sale" is the date of the public auction. As such, this Court decrees the "date of sale" to be December 3, 2003, the date of the public auction.

III.    CONCLUSION

Based upon a December 3, 2003, "date of sale", Plaintiff's Motion for Summary Judgment [Document #9] is GRANTED, and Defendant's Cross Motion for Summary Judgment [Document #12] is DENIED. Therefore, Defendant is hereby divested of any legal or equitable interest in the subject Property.

This, the 22nd day of July, 2005.

_____
United States District Judge

8